## FEDERAL RESERVE BANK OF DALLAS v. SMYLIE et al.

No. 5090.

Court of Civil Appeals of Texas. Amarillo.

Dec. 11, 1939.

Griffin & Morehead, of Plainview, for plaintiff in error.

Clyde Wright, of Silverton, and Frank B. Potter and Clyde O. Eastus, both of Fort Worth, for defendants in error.

STOKES, Justice.

This suit originated by the institution of a proceeding under an application for certiorari filed by plaintiff in error in the district court to revise an order of the probate court in the matter of the estate of Ben G. Smylie, deceased. The record shows that Ben G. Smylie was indebted to plaintiff in error in the sum of $5771.97, evidenced by a promissory note bearing interest at the rate of 6% per annum and providing for 10% attorney's fee. The note was secured by a chattel mortgage on livestock consisting of cattle, horses and sheep. Plaintiff in error filed its claim with J. C. Smylie, the administrator of the estate, in which it sought to have the mortgaged property set aside to it in satisfaction of the debt, free and clear of any and all liens, charges and expenses under the provisions of sub-section (b), Sec. 1 of Art. 3515a, Vernon's Annotated Civil Statutes. The mortgaged property was sold by the administrator for the sum of $2500, of which amount $1600 was paid to plaintiff in error and the balance was used by the administrator in the payment of funeral expenses, expenses of administration and other claims of the first and second class under Art. 3531, Vernon's Ann.Civ.St. The application of a portion of the proceeds of the sale of the livestock to the first and second class claims was made by the administrator with the knowledge and consent of all the creditors of the estate, including plaintiff in error, and exhausted the funds then in his hands. The record indicates that at the time these claims were paid, it was known by all of the parties that there was a possibility of some money being received by the estate from the Agricultural Adjustment Administration but its receipt was recognized as being doubtful and it seems that all of the parties, including the administrator, the creditors of the estate and the probate court, proceeded as though no amount would be so received.

After some $900 of the proceeds of the sale of the livestock had been applied to the payment of first and second class claims by the administrator with the knowledge and consent of plaintiff in error, the administrator received from the Agricultural Adjustment Administration a remittance in the form of a cheque in the sum of $702, whereupon plaintiff in error filed in the district court its application for a writ of certiorari, which was granted by the district court, in which it complained of the approval by the county judge of its claim as a third class claim under the provisions of Art. 3531 and sought to have it adjudicated as a preferential claim against the property upon which it held a mortgage as provided by sub-section (b), Sec. 1 of Art. 3515a, Vernon's Ann.Civ. St., which, if insisted upon before the sale of the property, would have entitled it to all of the proceeds of the sale of the mortgaged property and denied it the right to participate in any other assets of the estate.

Mrs. B. G. Smylie, the surviving wife of Ben G. Smylie, deceased, appeared upon the hearing and, by proper pleading, sought to have the court adjust and allow her claim for the sum of $500 which had theretofore been properly allowed by the probate court as widow's allowance, contending that her allowance should take precedence over any claim of plaintiff in error upon any funds, including the Agricultural Adjustment Administration's remittance, then in the hands of the administrator.

The United States Government filed in the cause in the district court a plea of intervention wherein it claimed a preferential right to so much of the fund in the hands of the administrator as was necessary to discharge an indebtedness of approximately $500 and interest, which it alleged was due it for money loaned through the Farm Credit Administration to Ben G. Smylie for the purpose of as-

sisting him in planting, harvesting and producing his crops under the provisions of the Act of Congress appropriating from the Treasury of the United States certain sums of money for the relief of agriculture.

The cause was submitted to the court without the intervention of a jury and the court decreed that plaintiff in error was entitled to the proceeds of the sale of the mortgaged property but that it take nothing out of the unencumbered assets belonging to the estate. Inasmuch as the proceeds of the sale of the mortgaged property had already been exhausted through the orders of the probate court under which the claims of the first and second class against the estate were paid and the balance of $1600 paid to plaintiff in error, the effect of this decree was to deny plaintiff in error any material relief.

The court further decreed that Mrs. B. G. Smylie, the widow, was entitled to receive the sum of $500 as an allowance for herself and the two minor children, this sum to be paid out of the unencumbered assets of the estate. At this time the administrator had no funds in hand except the $702 he had received from the Agricultural Adjustment Administration and this allowance to the widow had the effect only of decreeing to her the balance of the $702 after discharging the claim of the United States Government which on the date the judgment was rendered amounted to $667.36.

The court further decreed that the claim of the United States Government should be allowed in the sum of $667.36 as a first and superior claim against the fund in the hands of the administrator to be first paid out of the unencumbered assets of the estate and directed the administrator to pay the claims in the order decreed to the extent of the funds in his hands.

Plaintiff in error duly excepted to the judgment, gave notice of appeal, and has brought the case to this court by means of a writ of error.

The case is submitted here upon an agreed statement in which it is agreed that three questions are involved in the appeal, first, whether or not the Farm Credit Administration is such an agency of the United States Government as entitles the government to priority under the provisions of Sec. 3466, U.S.R.S., Title 31, Sec. 191, United States Code Annotated. Secondly, whether or not plaintiff in error is entitled to the entire fund in the hands of the administrator, which consists only of the $702 received by him from the Agricultural Adjustment Administration, as a reimbursement to it of the amount appropriated by the administrator under the order of the probate court to the first and second class claims against the estate and, thirdly, whether or not the claim of Mrs. B. G. Smylie for widow's allowance is superior to either or both of the other claims involved.

Sec. 3466, U.S.R.S., Title 31, Sec. 191, United States Code Annotated, provides that whenever any person indebted to the United States is insolvent or whenever the estate of the deceased debtor, in the hands of executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied. The estate being insolvent, the first question presented by the briefs and agreed statement involves, therefore, the nature of the Farm Credit Administration of the United States from which the deceased Ben G. Smylie procured what is commonly termed a crop loan. The indebtedness thus incurred by him, or a substantial portion of it, was outstanding and unpaid at the time of his death. If that indebtedness was an obligation due by him to the United States as distinguished from some other entity, it constituted a first and superior claim to so much of the unencumbered funds in the hands of the administrator as was necessary to discharge it. A glance at the history and organization of the Farm Credit Administration will, we think, throw sufficient light upon the question to reveal its exact nature. The Federal Farm Board was created by Act of Congress on June 15, 1929, which was near the inception of the general economic depression which is commonly known to have menaced the welfare of the people of the entire country for a number of years. Sec. 1141a, Title 12, United States Code Annotated. It was an unincorporated agency of the Government to carry out the purposes of the statute and had no identity separate from the government. North Dakota-M. W. G. Ass'n v. United States, 8 Cir., 66 F.2d 573, 92 A.L.R. 1484. Its purpose, as indicated by the title, was to administer the Agricultural Marketing Act, 12 U.S.C.A. § 1141 et seq., which was an Act to promote the effective merchandising of agricultural commodities in inter-state and foreign commerce and to place agriculture

on a basis of economic equality with other industries. The Farm Credit Administration is a continuation of the Farm Board thus created by the Act of Congress and substituted by executive order. On March 27, 1933, the President of the United States, under authority of the Act of Congress, substituted the Farm Credit Administration for the Federal Farm Board and, by executive order No. 6084, made a complete readjustment of administrative agencies of the government, including the Federal Farm Board, and the money advanced to farmers by the Farm Credit Administration was appropriated by Congress out of the United States Treasury. No provision was made for the incorporation of the Farm Credit Administration but it was, and still is, an agency through which the United States Government, in addition to other functions provided by the act of Congress, loans to farmers money to enable them to plant, cultivate and harvest their crops.

In connection with a number of relief funds which have been provided by Congress for the relief of certain lines of industry and business activity, provision has been made for the organization of what is commonly termed "stabilization corporations." Provision has been made whereby private citizens, as well as the Government, may own capital stock in these corporations. Where they have advanced their money in the form of loans it has generally been held that they are not the United States Government nor such agencies of the government as would entitle them to the benefits of the provisions of Sec. 3466, supra, which is here invoked. The distinction made by the courts between an agency of the government under whose operations the government is entitled to the benefits of the section mentioned and those agencies created by the government which are not entitled thereto, depends upon whether or not a separate and distinct legal entity is created. Sloan Shipyards Corp. v. United States Shipping Board, 258 U.S. 549, 42 S.Ct. 386, 66 L. Ed. 762; North Dakota-M. W. G. Ass'n v. United States, 8 Cir., 66 F.2d 573, 92 A.L.R. 1484; In re: Wilson (In re Dowell-Willis Chevrolet Co.), D.C., 23 F.Supp. 236.

In the North Dakota-M. W. G. Ass'n v. United States case, supra, the Circuit Court of Appeals said [66 F.2d 577]: "The moneys advanced by the Farm Board under the Act of Congress providing a revolving fund of $500,000,000 were government funds to be devoted to the advancement of a public purpose. * * * The argument is not at all appealing that the government had no authority to bring this action merely because the Agricultural Marketing Acts did not so provide, and that it must be brought by the Farm Board. We have pointed out that the Farm Board had no such authority. The government being the proper party to bring the suit, it follows that the Attorney General, the head of the Department of Justice with broad powers and responsibilities in respect to all legal matters of the government * * * had authority to initiate this action."

As we have shown, the functions of the Farm Credit Administration, under the laws enacted by Congress, are of the same nature as those of the original Federal Farm Board. It has no legal entity but exists as an agency of the United States Government to administer and disburse the funds appropriated by Congress out of the United States Treasury. Money thus distributed or loaned to farmers, when repaid by, or collected from, them necessarily is paid back into the Treasury of the United States from whence it was taken. That the United States Government had the right to collect it cannot be questioned nor can the conclusion that it was a debt due to the United States be assailed. The government having a first and superior claim upon the unincumbered property and funds of the estate of Ben G. Smylie, and having the right to enter the courts of the country and assert the rights given it under Sec. 3466 of the Code, the trial court could not have rendered a valid and legal judgment containing provisions other than those included in his decree.

Plaintiff in error contends that it had a first claim upon the fund of $702 in the hands of the administrator because the proceeds from the sale of property upon which it had a valid lien were used by the administrator to pay the claims against the estate falling in the first and second class. It asserts, therefore, that, when the $702 afterwards came into the hands of the administrator, plaintiff in error had the right to demand that it be placed in the vacancy created by the expenditure of the proceeds of the mortgaged property thus, in effect, placing its chattel mortgage lien upon the fund which came from the Ag-

ricultural Adjustment Administration. The suggestion is made that it is entitled to this under the principles of subrogation. We have been cited to no authority which lays down such a legal principle, nor have we been able to find one. Plaintiff in error did not have a lien of any kind upon the fund created by the payment of the $702. It is quite true that if it had such a lien upon the fund, the claim of the government would be subordinate to it, for, it is held that there are exceptions as to the funds out of which its claim is to be satisfied. If, prior to the accrual of its rights, the debtor has made a bona fide conveyance or mortgage to a third person, the property is divested out of the debtor and cannot be made liable to the claim of the United States. Thelusson et al. v. Smith, 2 Wheat. 396, 4 L.Ed. 271. When the $702 came into the hands of the administrator it was, however, unencumbered funds. If plaintiff in error acquired a lien thereon, it must have been, as suggested by it, through the principles of subrogation. The record shows that a portion of the proceeds of the sale of the property upon which it had a mortgage was paid by the administrator in discharge of first and second class claims by and with the consent of plaintiff in error. It is well established law in this state that money advanced or funds paid without an understanding or agreement that the owner of the funds or party making such payment shall have a lien to secure his reimbursement or that he shall be subrogated to the rights of prior holders of the debt thus discharged, is not entitled to be subrogated as a matter of contract and where the money is not furnished under compulsion or for the purpose of protecting a subordinate right, he is not subrogated as a matter of law. Hatton v. Bodan Lumber Co., 57 Tex.Civ.App. 478, 123 S.W. 163; Davidson v. Bodan Lumber Co., Tex.Civ.App., 143 S.W. 700; Batson v. First Nat. Bank, Tex.Civ.App., 60 S.W.2d 551. Plaintiff in error does not contend it had an agreement with any one that it should be reimbursed or that it should be subrogated to the rights of any other person when it consented that a portion of its funds should be used by the administrator in the manner stated. It did not consent that its fund be so used because of any compulsion under which it was laboring nor were any of its rights under the necessity of being protected by such payment. It is, therefore, in no position to claim subrogation under any theory of the law. We find no merit in the first and second contentions presented by the briefs and the assignments of error in connection therewith must be overruled.

■ The third contention is presented and urged by defendant in error, Mrs. Smylie. She contends that her claim for widow's allowance is superior to all of the claims of all the parties to the suit. What we have said in disposing of the first and second contentions disposes of her contention here that her claim is superior to that of the United States Government. Under the provisions of Sec. 3466, U.S.R.S., Title 31, Sec. 191, United States Code Annotated, the government's claim must first be paid before any other unsecured claims are discharged by the administrator. The statute is broad enough to, and does, cover Mrs. Smylie's claim for widow's allowance and the latter must be postponed and subordinated to the government's claim.

■ As to the relative standing of Mrs. Smylie's claim for widow's allowance and the claim of plaintiff in error, we hold that plaintiff in error has a valid claim against the estate of Ben G. Smylie, deceased, but under the provisions of Art. 3533, R.C.S.1925, it takes the fourth place and is subordinated in standing to the allowance made to the widow and children. The article mentioned provides that executors and administrators, when they have funds belonging to the estate, shall pay, first, funeral expenses, expenses of last sickness, second, allowance made to the widow and children, third, expenses of administration, and fourth, other claims against the estate in the order of their classification. By consenting to the appropriation of a portion of the proceeds from the sale of the mortgaged property, plaintiff in error permitted the dissipation of all of the fund in the hands of the administrator upon which it had any claim other than one of the fourth class under Art. 3531, R.C.S. We have held that it had no lien on the fund now in the hands of the administrator and, having no lien, it is entitled to be paid only after the funeral expenses, allowance to the widow and children, and the expenses of administration have been paid. Art. 3533, supra.

What we have said demonstrates that we are in accord with the conclusions of the court below in disposing of the case and finding no error in the judgment, it is in all respects affirmed.

FOLLEY, J., not sitting.