UNITED STATES DEPARTMENT OF AGRICUL-
TURE, EMERGENCY CROP AND FEED LOANS
*v.* REMUND, ADMINISTRATOR.

No. 417.  Argued February 5, 1947.—Decided March 17, 1947.

*Paul A. Sweeney* argued the cause for petitioner.  With
him on the brief were *Acting Solicitor General Washing-*

*ton, Assistant Attorney General Sonnett, Melvin Richter* and *Philip Elman.*

*Dwight Campbell* submitted on brief for the respondent.

Opinion of the Court by MR. JUSTICE MURPHY, announced by MR. JUSTICE RUTLEDGE.

We are faced here with the problem of whether, in a state probate proceeding, a claim asserted by the Farm Credit Administration through certain of its officials for and on behalf of the United States is entitled to priority under § 3466 of the Revised Statutes, 31 U. S. C. § 191.

The Governor of the Farm Credit Administration, pursuant to the Acts of February 23, 1934,[1] and June 19, 1934,[2] extended emergency feed and crop loans totalling $370.00 to Wilhelm Buttke, a South Dakota farmer. Most of these loans remained unpaid. On December 26, 1941, Buttke died intestate, leaving an estate insufficient to pay all of his debts. Respondent was appointed administrator of the estate. On March 2, 1942, an authorized agent of the Governor of the Farm Credit Administration filed in the County Court of Roberts County, South Dakota, a claim against the estate for $523.80, the amount of the unpaid indebtedness plus interest. This claim was made "for and on behalf of the United States of America" and a priority therefor on behalf of the United States was asserted under § 3466 of the Revised Statutes.

The County Court denied preference to this claim. But it did allow the claim in the amount of $79.53, which represented the pro rata share of a common creditor's claim. This decision was affirmed by the Circuit Court of the Fifth Judicial Circuit of South Dakota and by the Supreme Court of South Dakota. 70 S. D. —, 23 N. W.

---

[1] 48 Stat. 354.

[2] 48 Stat. 1021, 1056.

2d 281.    The latter court felt that the Acts of February 23, 1934, and June 19, 1934, created an exception to § 3466 and that the claimed priority should accordingly be refused on the authority of *United States* v. *Guaranty Trust Co.,* 280 U. S. 478.    We granted certiorari because of the important problems thereby raised.

The relevant portion of § 3466 of the Revised Statutes provides that ". . . whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied . . . ."

Initially, it is suggested that § 3466 is inapplicable since the claim in issue is not a debt due to the United States. The claim grows out of the seven notes executed by the deceased to "the Governor of the Farm Credit Administration, or order, at Washington, D. C."    These notes stated that they were "given as evidence of a loan made by the Governor of the Farm Credit Administration." On the premise that the Farm Credit Administration is an entity separate and distinct from the United States Government, the argument is made that obligations due the Farm Credit Administration fall outside the priority established by § 3466.    We cannot agree.

The Farm Credit Administration is plainly one of the many administrative units of the United States Government, established to carry out the functions delegated to it by Congress.    It bears none of the features of a government corporation with a legal entity separate from that of the United States, whatever difference that might make as to the application of § 3466.    Cf. *Sloan Shipyards Corp.* v. *United States Fleet Corp.,* 258 U. S. 549.    It had its inception in 1933 as an independent agency, assuming the functions of the Federal Farm Board and the Federal Farm Loan Board.    Executive Order No. 6084.    In 1939,

it was transferred to the Department of Agriculture and placed under the general supervision and direction of the Secretary of Agriculture. Reorganization Plan No. 1, § 401 (a), 53 Stat. 1429, 4 Fed. Reg. 2730. Its functions, personnel and property were then consolidated in 1942 with those of certain other agencies to form the Food Production Administration of the Department of Agriculture. Executive Order No. 9280, 7 Fed. Reg. 10179. At no time has the Farm Credit Administration been other than an unincorporated agency of the United States Government, administering and lending funds appropriated by Congress out of the United States Treasury and returning the money to the Treasury upon repayment. In short, it is an integral part of the governmental mechanism. And the use of a name other than that of the United States cannot change that fact. *United States* v. *Fontenot,* 33 F. Supp. 629; *In re Wilson,* 23 F. Supp. 236; *Federal Reserve Bank of Dallas* v. *Smylie,* (Tex. Civ. App.) 134 S. W. 2d 838; *Helms* v. *Emergency Crop & Seed Loan Office,* 216 N. C. 581, 5 S. E. 2d 822. See also *North Dakota-Montana Wheat Growers' Assn.* v. *United States,* 66 F. 2d 573. Hence any debt owed the Farm Credit Administration is a debt owed the United States within the meaning of § 3466.

Moreover, the priority given by § 3466 to a debt due to the United States is unaffected by the fact that a claim based upon that debt is filed in the name of an agency of the United States or an authorized officer of such an agency. It is enough that there is an obligation owed the United States. Whether the claim is filed in the name of the United States or in the name of an officer or agency is immaterial; in the latter instance, the claim is necessarily filed on behalf of the United States and the legal effect is the same as if it had been filed in that name. Nothing in the language or policy of § 3466 justifies any other conclusion. It follows that the method of filing in

this case cannot be questioned. The claim was filed in the name of the Governor of the Farm Credit Administration "for and on behalf of the United States of America"— an explicit recognition of the legal realities involved.

The main contention, however, is that the purpose of the statutes under which the loans were made is inconsistent with § 3466, thereby rendering it inapplicable. The Acts of February 23, 1934, and June 19, 1934, authorized feed and crop loans to farmers in drought and storm-stricken areas of the nation. It is said that the prime purpose of these Acts was to restore the credit of the farmers and that to give effect to § 3466 would impair that credit. Reliance is placed upon *United States* v. *Guaranty Trust Co., supra.* This Court there held that § 3466 was inapplicable to the collection of loans made by the Government to railroad carriers to rehabilitate and maintain their credit status; it was felt that to give priority under such circumstances would defeat the purpose of the legislation by impairing the credit of the railroads. See also *Cook County National Bank* v. *United States,* 107 U. S. 445.

But it is manifest that the purpose of the Acts of February 23, 1934, and June 19, 1934, was to give emergency relief to distressed farmers rather than to restore their credit status. These were but two of a series of emergency feed and crop loan statutes [3] enacted at various times from 1921 to 1938, a period when farmers were the victims of repeated crop failures and adverse economic conditions. Their credit was often impaired, but their most urgent need was for money to purchase feed and to plant crops; without such money, distress and unemploy-

[3] 41 Stat. 1347; 42 Stat. 467; 43 Stat. 110; 44 Stat. 1245, 1251; 45 Stat. 1306, as amended by 46 Stat. 3; 46 Stat. 78, as amended by 46 Stat. 254; 46 Stat. 1032, as amended by 46 Stat. 1160; 46 Stat. 1276; 47 Stat. 5; 47 Stat. 795; 48 Stat. 354; 48 Stat. 1056; 49 Stat. 28; 50 Stat. 5; 52 Stat. 27.

ment might have been their lot. It was to meet that urgent need that Congress passed these statutes.

More specifically, the two Acts under consideration were designed to make loans available to those farmers who were unable to secure credit from the Production Credit Associations, organized pursuant to the Farm Credit Act of 1933.[4] It was recognized that many farmers could not qualify for loans from those Associations. Some method of lending aid and assistance to those who had no credit and no money with which to buy feed for their livestock and seeds for their crops was essential in the absence of a more direct form of Government relief. S. Rep. 148, 73d Cong., 2d Sess.; H. Rep. 521, 73d Cong., 2d Sess. As was said by Representative Kerr, "Let it be remembered that the Government is not seeking to make an investment; this is simply an endeavor to finance the farmers of this country who are utterly unable to finance themselves." 78 Cong. Rec. 1959. See *United States* v. *Thomas,* 107 F. 2d 765, 766; *Person* v. *United States,* 112 F. 2d 1, 2.

We conclude that there is no irreconcilable conflict between giving emergency loans to distressed farmers and giving priority to the collection of these loans pursuant to § 3466. Such priority could in no way impair the aid which the farmers sought through these loans; nor could it embarrass the farmers in their daily operations. Moreover, these loans called for a first lien on crops growing or to be grown, or on livestock. The conditions prevailing in 1934 made this type of security uncertain and there is no indication that Congress meant such a lien to be the sole security to which the Government could look for repayment.

We reiterate what was said in *United States* v. *Emory,* 314 U. S. 423, 433: "Only the plainest inconsistency

---

[4] 48 Stat. 257.

would warrant our finding an implied exception to the operation of so clear a command as that of § 3466." In this case, as in that, we think such inconsistency is wholly wanting. *United States* v. *Guaranty Trust Co., supra,* is therefore inapposite.

*Reversed.*

MR. JUSTICE DOUGLAS would affirm the judgment on the authority of *United States* v. *Guaranty Trust Co.,* 280 U. S. 478.