**PINSKY et al. v. UNITED STATES.**

No. 13250.

United States Court of Appeals
Ninth Circuit.

March 11, 1953.

Rehearing Denied April 8, 1953.

8

W. Torrence Stockman, Los Angeles, Cal., for appellant.

Ed Dupree, General Counsel, Office of Rent Stabilization, Washington, D. C., A. M. Edwards, Jr., Asst. Gen. Counsel, O. R. S., Washington, D. C., Nathan Siegel, Solicitor, O. R. S., Washington, D. C., John A. McLeod, Jr., Special Litigation Atty., O. R. S., Washington, D. C., Isadore A. Honig, Special Litigation Atty., O. R. S., Washington, D. C., for appellee.

Before MATHEWS, ORR and POPE, Circuit Judges.

POPE, Circuit Judge.

This is an appeal from a judgment requiring the appellants, as part owners of certain housing accommodations in Los Angeles, to refund to the United States for the benefit of certain named tenants, sums claimed to have been overcharges of rent. The action was brought in the name of the Housing Expediter. The principal defense was that under the terms of the Housing and Rent Act of 1947, as amended, Title 50 U.S.C.A.Appendix, § 1881 et seq., the establishment in which these housing accommodations were located was a hotel and hence within an express exception to that portion of the Act which defined "controlled housing accommodations".

We are first confronted with the appellant's contention that the cause should have been dismissed for the reason that there is no proper party plaintiff. The action was commenced March 25, 1949. At that time the right to institute such an action in his own name was vested in the Housing Expediter by virtue of Executive Order 9841, 50 U.S.C.A.Appendix, § 601 note, 12 Fed.Reg. pp. 2645, 2646. By a subsequent Executive Order No. 10,276, 50 U.S.C.A.Appendix, § 1898 note, issued July 31, 1951, 16 Fed.Reg. p. 7535, the office of the Housing Expediter was terminated and the powers conferred upon the President under the Housing and Rent Act of 1947, as amended, were vested in the Economic Stabilization Administrator. That Administrator, as authorized in the Executive Order mentioned, by his General Order 9, dated July 31, 1951, 16 Fed.Reg. 7630, proceeded to delegate those powers to a Director of Rent Stabilization. Thereafter, and on September 5, 1951, the attorneys for plaintiff moved the court below for an order substituting the United States as plaintiff in this action. The motion was granted and the United States substituted as party plaintiff accordingly. This action, taken over the objection of the appellants, is also assigned as error. The contention is that the only proper plaintiff to be substituted was the Economic Stabilization Administrator, and that motion accordingly should have been made under Federal Rule 25(d), Fed.Rule Civ.Proc. 28 U.S.C.A.[1] Appellants say that in consequence of the failure to have the proper plaintiff substituted the action was tried without an authorized plaintiff and should have been dismissed, and that it is now too late to remand the cause for a correction of this error since the six months provided in the rule have long since expired.

The substitution of the United States as a party plaintiff was proper. The suit was brought under § 206(b) of the Act referred to. 50 U.S.C.A.Appendix § 1896(b). The relief sought was restitution, as described in Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332, and in United States v. Sheff, 9 Cir., 194 F.2d 596. This subdivision of the Act,

1. "(d) Public Officers; Death or Separation from Office. When an officer of the United States, * * * or other governmental agency, is a party to an action and during its pendency dies, resigns, or otherwise ceases to hold office, the action may be continued and maintained by or against his successor, if within 6 months after the successor takes office it is satisfactorily shown to the court that there is a substantial need for so continuing and maintaining it. * * *"

in providing for the institution of such a suit, recites that "the United States may make application to any Federal, State, or Territorial court of competent jurisdiction * * *", thus clearly designating the real party in interest. In Woods v. Rose, 9 Cir., 171 F.2d 290, 291, this court, disapproving a dismissal of a similar action brought under the former Act, said: "The United States was at all times, and is now, the real party in interest". That was an action in which Fleming, as Administrator of the Office of Price Controls, had brought the suit to recover for violations of rent regulations. While the suit was pending, his functions were transferred to the Housing Expediter. The court said that "Fleming was a nominal party only". In using that language it referred to its earlier decision in United States v. Koike, 9 Cir., 164 F.2d 155, which was an action to recover treble damages for violation of maximum price regulations. There it was said that the proposal to substitute the United States as plaintiff did not involve substituting a successor in office under Rule 25(d), that it was not technically a matter of making a new party at all, since the Price Administrator, the named plaintiff, was no more than a nominal plaintiff, and the United States, "on behalf of which the action was brought, was the real plaintiff". Therefore, the court said, inserting the name of the United States in the caption of the pleadings was no more than a proper amendment pursuant to the broad power of the court to amend pleadings in matters of form at any stage of the case.

In United States v. Allied Oil Corp., 341 U.S. 1, 71 S.Ct. 544, 546, 95 L.Ed. 697, the Supreme Court arrived at the same conclusion as had this court in the case last cited. That also had to do with an action arising out of over-ceiling prices. While it is true that in that case the court held that the propriety of maintaining the suits in the name of the United States was expressly authorized by Executive Order 9842, 50 U.S.C.A.Appendix, § 925 note, 12 Fed.Reg. 2646, which apparently refers only to maximum prices and not to excessive rents, yet the conclusion was not based on that ground alone. The court there said:

"Regardless of captions, the issues in these cases could not change and the real party-in-interest plaintiff has always been the same. Cf. United States Dept. of Agriculture, Emergency Crop and Feed Loans v. Remund, 330 U.S. 539, 542–543, 67 S.Ct. 891, 892, 893, 91 L.Ed. 1082." The principle expounded in the Koike case, supra, and again in Woods v. Rose, supra, was approved by the Eighth Circuit in Fleming v. Goodwin, 165 F.2d 334, 338, and by the Tenth Circuit in Northwestern Lumber & Shingle Co. v. United States, 170 F.2d 692, 694. We hold that the substitution of the United States was proper and that there is no basis for a motion to dismiss on account of lack of proper plaintiff.

In dealing with the defense principally urged by the appellant, the trial court found and concluded that the housing accommodations described in the complaint were not in a hotel within the meaning of the exemption provision of the Act and hence, since the amount of rents collected by the various tenants were stipulated, and since those amounts exceeded the maximum rents applicable to the various units under the regulations relating to controlled housing accommodations, the appellants had violated the Act and the plaintiff was entitled to a judgment for the excess amounts. The Act, 50 U.S.C.A. Appendix § 1892, in defining "controlled housing accommodations" recites that this term does not include "those housing accommodations, in any establishment which is commonly known as a hotel in the community in which it is located, which are occupied by persons who are provided customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service". The question presented here is whether the trial court's finding that the premises described in the complaint did not belong within that excepted category was clearly erroneous.

In considering the evidence which was before the court, we note the statute's emphasis upon the proposition that the premises be an "establishment which is commonly known as a hotel in the community in which it is located", and upon the enu-

meration of so-called customary hotel services which include "maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service."

The property in question was a two-story structure containing 20 rental units, ten on each floor. A central hall extended the full length of each story, the hall on the first story being slightly wider near the center of the building. Each of the twenty units was fully furnished with a "pull-down" bed, and with other suitable sitting room and bed room furniture and lamps, and was supplied with bedding. Each unit had a bathroom supplied with towels and each had a niche or alcove with shelves wherein was located a refrigerator..

With respect to the customary hotel services listed in the Act, it was stipulated that there was sufficient maid service, linen supply, cleaning and furniture maintenance to satisfy the statutory requirements. As for the other listed services, the evidence shows that there was no secretarial or desk service, no telephone service and no bellboy service; no provisions were made for the registration of guests; there was no clerk or other person on duty to serve or. receive guests; there was no switchboard, and no intercommunication by telephone within the building. If the tenants required telephone service they either had to have their own private telephones installed in their apartments, or they had to use the public pay phone which was installed by the telephone company in the building. The mail for the tenants was delivered by the post office department into individual wall-type mail boxes located in the downstairs front hall of the building. The manager, a lady who lived next door in a similar building, testified that she made frequent visits to the building and occasionally assisted tenants by orally delivering to them messages which she had been asked to pass on to them by telephone. While some efforts were made to show that bellboy service was furnished through the manager's husband, the testimony showed that the husband worked elsewhere from 8 A.M. until 5 P.M., and that al-though he carried bags for some of the tenants, other tenants testified that they had to carry their own luggage.

With respect to the question whether the establishment was "commonly known" as a hotel in the community, the testimony developed that the building had no hotel sign, it did not advertise as a hotel, and was not so listed in telephone directories or trade publications. It was not listed in the classified portion of the telephone directory prior to September, 1947. It was then included under the heading of apartments. The tenants in the building occupied their rented spaces under one year leases, and this condition continued until after June 30, 1947. The leases were executed on mimeographed forms referring to the demised premises as "apartment No. ... in that certain apartment building located at 619 South Houser, Los Angeles, Calif." and the lessor was stated to be "Southwood Apartments, Houser, Inc."; elsewhere in the lease form the building is referred to as an "apartment building". The tenants also signed written acknowledgments appended to inventories which were described as "Inventory of furniture, furnishings and equipment located in apartment No. ...".

Various tenants testified to the effect that they not only used a hot plate for cooking meals within their apartments but that they had an understanding before they moved in that they were privileged to do so. Although there was some evidence from the manager that the tenants were not allowed to cook in the apartments, a number of the tenant witnesses testified that the manager knew the hot plates were being used, and made no objection. There was also testimony that in each apartment there was a shelf covered with metal on which the hot plate was placed. It was also developed that the front door to the building was locked at 10 o'clock at night, after which time the tenants had to let themselves in with their own keys. The tenants were not furnished soap or toilet tissue.

With this evidence before it, the court was, we think, presented with a simple question of fact. Its finding was not clearly

erroneous. Appellants argue, however, that we must accept in its entirety the testimony of certain of their witnesses and particularly that of one Kinsey. Kinsey testified that he had had much experience as owner and operator of apartment houses and hotels in Los Angeles where he had been in business for 25 years and had owned and operated some 250 apartment houses and hotels. He stated that he had inspected the building in question and that in view of the way in which it was constructed, and because of the absence of kitchens and kitchen facilities, the building was in his opinion a hotel and not an apartment house. The key to his testimony was that in his view the design and structure of a building determined whether it was a hotel or not, and that considering the way in which the building was constructed, the rooms had to be hotel rooms regardless of what the tenants did or how much cooking went on. Although this witness was asked as to the reputation of the building and answered that it had the reputation of being a hotel, there was no inquiry as to the source from which the witness learned of this so-called reputation. His testimony suggests that he may not have understood the meaning of the word "reputation", as he testified: "The reputation of a building is not determined by the holding out of an owner as to what he is operating, the way he advertises the building, and the way he operates it. These factors cannot change the physical features of a building. One can call a building anything he wants to, but still it has to be a hotel if it is a hotel, regardless of what it is called."

We find nothing in the testimony of this or any other witness which would compel the trial court to accept the witness' opinion or conclusion as controlling or outweighing the many bits of evidence tending to show that this building lacked the common features of a hotel.

■ There were also introduced in evidence photographs of the building and the structure there disclosed seems to the members of this court to bear no evidence or even a suggestion of its being a hotel. The burden was upon the appellants here to prove that the premises were within the exemption provision. Bray v. Peck, 9 Cir., 190 F.2d 998, 1002; Feeley v. Woods, 9 Cir., 190 F.2d 228, 232. As in the case last cited, we hold that the issue here as to whether the premises were a hotel within the meaning of the exemption clause, was one of fact for the trial court, and upon this record we cannot hold that determination clearly erroneous. Cf. Sherman Inv. Co. v. United States, 8 Cir., 199 F.2d 504, 506.

Appellants make some additional claims based upon their assertion that the action was not brought in good faith. The argument seems to be that actions brought under § 206(b) must be primarily actions for an injunction, and that restitution of rents is properly only a subordinate type of relief, incidental to an injunction. It is argued that when the action was commenced no hearing was ever sought on the application for preliminary injunction. Appellants suggest that this shows that the complaint was filed in bad faith and that the prayer for injunctive relief was used solely as an excuse for seeking restitution for overcharges under § 206(b) in order to get away from the one year statute of limitations under § 205. In this connection they further argue that rent regulations were lifted in the Los Angeles defense rental area before the action was tried; that their motion after that time for trial by jury should have been granted since there was no longer any excuse for equitable relief by way of injunction.

■■ That the expiration of the controls did not deprive the court of jurisdiction to order restitution is plain from this court's decision in Woods v. Richman, 9 Cir., 174 F.2d 614, 615. No jury was demanded within the time required by the rule. Apparently the appellants have the view that since injunctive relief became impossible by reason of the termination of controls, the action was converted into one at law in which they should be entitled to trial by jury regardless of their failure to demand it in time. As this court pointed out in United States v. Sheff, supra, and in Gross v. United States, 9 Cir., 201 F.2d 780, the remedy by way of restitution is equitable in character and wholly distinct

from the remedy of statutory damages. This contention of appellant is without merit.

 Finally, it is argued that the judgment as against these appellants is excessive in that they were the owners of only a three-fourths interest in the property and the owner of the other undivided one-fourth interest was not a party to the suit. The court found that the appellants here "received from the persons listed in said schedule * * * the rents listed * * * and that such rents exceeded the maximum rents * * *." This is the very thing which § 206(a) of the Act makes unlawful.[2] We think that the liability in a case of this kind is joint and several and that the full purpose of the remedy which this court discussed in the Sheff case, supra, can be assured only by so holding.

The judgment is affirmed.

2. Title 50 U.S.C.A.Appendix, § 1896(a) (1): "It shall be unlawful for any person to demand, accept, receive, or retain any rent for the use or occupancy of any controlled housing accommodations in excess of the maximum rent prescribed under this Act."