MeWILLIAMS, Circuit Judge.
The issue to be resolved is whether the Tennessee Valley Authority is entitled to a fifth priority under the provisions of 11 U.S.C. § 104(a)(5).[1] Stated differently, the issue is whether a debt due the Tennessee Valley Authority is a debt “due the United States” under the provisions of 31 U.S.C. § 191.[2]
The bankruptcy judge, after an extensive evidentiary hearing, held that TVA was entitled to a fifth priority under 11 U.S.C. § 104(a)(5). The district court upheld the bankruptcy judge. We affirm the district court.
Agricultural Business Company, Inc., was a blender and manufacturer of fertilizers which it sold directly to farmers. It contracted with TVA, pursuant to standard contractual terms, to cooperate in the introduction to farmers of new and improved fertilizers, pursuant to the terms and provisions of the TVA Act. Under that agreement Agricultural Business Company purchased and received 1,050.17 tons of a new, experimental fertilizer known as “12-44-0.” This was an innovative, liquid-based, poly-phosphate product developed at the National Fertilizer Development Center at Muscle Shoals, Alabama. It was to be used by fertilizer manufacturers to combine with ammonia and potash to make a high-grade, high-analysis, finish-grade fertilizer to sell to farmers. The product which Agricultural Business Company bought was never made anywhere else, or by anyone else than TVÁ, and was sold only to contractors cooperating in the research program under the TVA Act.
Agricultural Business Company did not pay TVA for the material thus purchased, and the latter obtained a judgment against the former in the amount of $92,572.42. Agricultural Business Company later commenced insolvency proceedings. TVA filed a claim in the bankruptcy proceedings based on the judgment previously obtained by it against Agricultural Business Company, now bankrupt, and in connection therewith sought a so-called fifth priority under the provisions of 11 U.S.C. § 104(a)(5). The trustee in bankruptcy objected to the granting of such priority on the grounds that the debt owed TVA was not a debt due the United States, and that the indebtedness was not incurred while the TVA was performing a governmental service. As indicated, the bankruptcy judge upheld TVA’s claim that it was entitled to a fifth priority, and the district court in turn upheld the bankruptcy judge.
Concerning the nature of TVA’s fertilizer program, the bankruptcy court found as follows:
7. The objective of the TVA fertilizer program is the production and introduction of new fertilizer technology into the farm economy, resulting in the development of better and more economical fertilizers and fertilizer practices for use by American farmers, and is not to make a profit. In fact as the evidence shows, the expenses of TVA’s fertilizer program since its inception in 1933, have exceeded the revenues from the program by about a quarter of a billion dollars, and the difference has been satisfied annually *785 through congressional appropriations of public funds (tr. 26; testimony of Charles Howard Howell, July 15, 1977). In each of the last seven fiscal years, the expenses of the fertilizer program have exceeded revenues (the amounts ranging from $6.635 million to $20.911 million), and these amounts have been satisfied annually through congressional appropriations (TVA’s answers to interrogatories. Nos. 4 and 5). Since the objectives of TVA’s fertilizer program involve research, development, and introduction of new experimental fertilizers into farm use, TVA’s policy being to withdraw completely from the market when industry adopts and begins producing and selling the fertilizer, the revenues from TVA’s fertilizer program are not expected to meet the program’s expenses, (tr. 26; testimony of Dr. Billy Joe Bond, February 25, 1977; TVA’s answers to interrogatories No. 8).
Based on the foregoing findings, the bankruptcy judge concluded that TVA’s fertilizer program was governmental in nature.
In adopting and affirming the bankruptcy judge’s findings relating to the TVA fertilizer program, the district judge commented as follows:
In the memorandum opinion accompanying the order here appealed from, the bankruptcy court made findings of fact that TVA “is a wholly owned corporate instrumentality and agency of the United States;” that its fertilizer development program (including its fertilizer marketing activities) are within the scope of the TVA’s statutory authority; that the fertilizer transactions between TVA and bankrupt involved a unique and innovative product which was to be introduced to the market through such distributors as bankrupt; and that the development and introduction of such experimental fertilizers through conduits such as bankrupt is the function of the TVA fertilizer program. TVA withdraws from the product market if and when private industry responds to market acceptance of such new fertilizers by producing and selling equivalent products. TVA’s fertilizer program is not designed to operate profitably, and in fact does not do so. Insofar as these constitute proper findings of fact, they are not “clearly erroneous.” Bankruptcy Rules, Rule 810. Indeed, these findings are supported by quite ample evidence.
The trustee contends that the judgment of the district court must be reversed for any of three reasons: (1) Under Sloan Shipyards v. U. S. Fleet Corp., 258 U.S. 549, 42 S.Ct. 386, 66 L.Ed. 762 (1922), TVA’s corporate status defeats its claim for priority; (2) if TVA’s corporate status is immaterial, then TVA is not entitled to priority because its fertilizer program is commercial in nature, and not governmental in nature; and (3) if neither of the above grounds for denying priority is availing, then the priority should be denied because the Tennessee Valley Authority Act of 1933, and its amendments, which created the TVA, did not specifically provide that a debt owed the TVA is a debt owed the United States within the meaning of 31 U.S.C. § 191 and entitled to priority under 11 U.S.C. § 104(a)(5). In our view none of these matters justifies a reversal, and we therefore affirm.
The trustee’s initial position is that the mere fact that TVA is a corporate entity, as opposed to an unincorporated administrative agency, precludes the granting of a priority to TVA under the provisions of 11 U.S.C. § 104(a)(5). The primary authority for such proposition is Sloan Shipyards v. U. S. Fleet Corp., supra. We think counsel overreads Sloan.
It is quite true that the corporation in Sloan was not allowed the priority which TVA seeks in the instant case. However, the corporation in Sloan was, in our view, markedly different than TVA. In Sloan, the Shipping Act of 1916 established the United States Shipping Board and gave it the power to form a corporation under the laws of the District of Columbia for the purchase, construction and operation of merchant vessels. Pursuant to such power *786 the Shipping Board caused the Emergency Fleet Corporation to be incorporated under the laws of the District. The Shipping Act contemplated a corporation in which private persons might be stockholders.[3] To us, TVA is in a far. different position than the Emergency Fleet Corporation. TVA is a public corporation created by Act of Congress, and not only is TVA wholly owned by the United States, but it could only be owned by the United States.
Because the TVA is so dissimilar from the Emergency Fleet Corporation, we do not believe that Sloan controls the present case. Additionally, Supreme Court cases subsequent to Sloan indicate that, at the least, Sloan should be confined to its facts. In United States v. Remund, 330 U.S. 539, 67 S.Ct. 891, 91 L.Ed. 1082 (1947), the Supreme Court held that the Farm Credit Administration was entitled to the priority afforded by 31 U.S.C. § 191. The Farm Credit Administration was an unincorporated administrative unit of the United States Government, and counsel here concedes that unincorporated administrative agencies are entitled to priority. In Remund the Supreme Court pointedly observed that the Farm Credit Administration had “none of the features of a government corporation with a legal entity separate from that of the United States, whatever difference that might make as to the application of . [31 U.S.C. § 191].” (Emphasis added.) 330 U.S. at 541, 67 S.Ct. at 892.
In Cherry Cotton Mills v. United States, 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835 (1946), the Supreme Court was concerned with the Reconstruction Finance Corporation. In a non-bankruptcy setting, the Supreme Court commented on the Reconstruction Finance Corporation as follows:
Its Directors are appointed by the President and confirmed by the Senate; its activities are all aimed at accomplishing a public purpose; all of its money comes from the Government; its profits, if any, go to the Government; its losses the Government must bear. That the Congress chose to call it a corporation does not alter its characteristics so as to make it something other than what it actually is, an agency selected by Government to accomplish purely Governmental purposes. 327 U.S. at 539, 66 S.Ct. at 730.
For the reasons which we shall develop shortly, we believe, as did the district court, that the TVA is governmental in its general nature, and that in particular the TVA fertilizer program is governmental in nature, and not industrial or commercial in character. Such being the case, we do not think it is of any great moment whether the United States conducts its governmental business through an unincorporated administrative agency or through a federal corporation created by Act of Congress and wholly owned by the United States. As Justice Frankfurter observed in Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, at 384, 68 S.Ct. 1, at 3, 92 L.Ed. 10 (1947) “[t]he Government may carry on its operations through conventional executive agencies or through corporate forms especially created for defined ends.”
As aboye stated, the bankruptcy judge conducted a full evidentiary hearing into the character and nature of TVA’s fertilizer program. He concluded that such program was governmental in nature and his findings and conclusions were upheld by the district court. Such findings are not clearly erroneous, and the conclusion reached is, we believe, legally correct. In Mayo v. United States, 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504 (1943) the Supreme Court held that in distributing fertilizér pursuant to the Soil Conservation and Domestic Allotment Act, the United States was acting in its governmental capacity. In Tennessee Power Co. v. T. V. A., 306 U.S. 118, at 134, 59 S.Ct. 366, 83 L.Ed. 543 (1938), the Supreme Court referred to the TVA as an “instrumentality of the United States.” In Morgan v. Tennessee Valley Authority, 115 F.2d 990, at 994 (6th Cir. *787 1940) the TVA was referred to as “predominately an administrative arm of the executive department.” In Ramsey v. United Mine Workers of America, 27 F.R.D. 423, 425 (E.D.Tenn.1961) the TVA was referred to as follows:
The government of the United States can perform its functions only through officers and agencies. The TVA is a wholly owned government corporation, managed by directors to be named by the President and approved by the Senate. The directors have authority to employ attorneys, define their duties and TVA may sue and be sued in its corporate name. In the TVA charter, it is provided that offenses against it shall be deemed the same as offenses against the United States and all the land acquired by it is in the name of the United States. Actually the TVA is the United States in action, “an arm of the government,” and an agency performing wholly governmental service. TVA Charter, 16 U.S.C.A. § 831 et seq.
The final ground relied on for reversal is the fact that Congress in creating the TVA did not, by statute, specifically grant TVA the priority here sought by TVA under 31 U.S.C. § 191 and 11 U.S.C. § 104(a)(5). It is suggested that any inference of priority status in the absence of a specific statutory grant is impermissible. We disagree, and believe the reverse of that proposition is the legally correct position, i. e., the priority already existing continues unless specifically negated by the statute creating TVA, which is not the case.
The argument that because Congress did not specifically grant in the Act creating TVA the priority which it already enjoyed under 31 U.S.C. § 191 and 11 U.S.C. § 104(a)(5), such omission somehow vitiated the priority already enjoyed by the United States, was considered, and rejected, in United States v. Emory, 314 U.S. 423, 62 S.Ct. 317, 86 L.Ed. 315 (1941). In Emory the United States acting under the National Housing Act sought priority under 11 U.S.C. § 191. The National Housing Act made no reference whatsoever to priority in bankruptcy proceedings. In that circumstance the Supreme Court held that inasmuch as there was no express relinquishment of the priority, and the priority was not inconsistent with the purposes of the Housing Act, the priority was available to the Government.
In sum, then, the debt owed TVA is a debt due the United States.
Judgment affirmed.

. 11 U.S.C. § 104(a)(5) provides that “[t]he debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be . (5) debts owing to any person, including the United States, who by the laws of the United States is entitled to priority . . .

. 31 U.S.C. § 191 provides that “[wjhenever any person- indebted to the United States is insolvent, . . . , the debts due to the United States shall be first satisfied .

. The United States in fact owned all the stock, but, according to the Supreme Court, “that did not affect the legal position of the company.”