[No. B049809. Second Dist., Div. Seven. Sept. 28, 1990.]

FEDERAL HOME LOAN MORTGAGE CORPORATION,
Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
ROXANI M. GILLESPIE, as Insurance Commissioner, etc., et al.,
Real Parties in Interest.

**Counsel**

Dean S. Cooper, Jan T. Chilton, Laura J. Dorman, Severson & Werson, William D. Compton and Arter & Hayden for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Mark P. Richelson, Deputy Attorneys General, Honigman, Miller, Schwartz & Cohn, Stephen Wasinger, Sheldon S. Toll, Frederick M. Baker, Jr., Dorais & Wheat, Carol B. Singer, Wilmer, Cutler & Pickering, Gary D. Wilson, William J. Perlstein, Michael J. Stevenson, Paul A. Vergets, Poindexter & Doutré, James P. Drummy, Jenner & Block, David E. Zerhusen, Ballard,

Spahr, Andrews & Ingersoll, Joseph A. Fanone, William A. Slaughter, Brobeck, Phleger & Harrison and Daniel J. Woods for Real Parties in Interest.

## Opinion

**JOHNSON, J.**—We issued an order to show cause to determine whether petitioner Federal Home Loan Mortgage Corporation (Freddie Mac) should be granted priority in its claim against the estate of TMIC Insurance Company (TMIC). We conclude Freddie Mac is not entitled to priority and accordingly deny the petition.

### Statement of Facts and Proceedings Below.

Freddie Mac is a United States corporate entity created pursuant to 12 United States Code sections 1451-1459 to develop a secondary mortgage market for conventional residential loans. Freddie Mac purchases residential mortgages and resells them in the form of guaranteed mortgage securities. Freddie Mac guarantees to the security holders timely payment of the interest and the ultimate collection of the principal balance. The securities are not guaranteed or insured by the United States Government or any government agency.

Freddie Mac's common stock is owned by the Federal Home Loan (FHL) banks. (12 U.S.C. § 1453(a)(1).) Freddie Mac has also issued preferred stock which was initially distributed on a pro rata basis to the FHL bank shareholders who in turn distributed the preferred stock to their own stockholders. Trading of the preferred stock was limited to stockholders of record of any FHL bank and, with certain restrictions, members of the New York Stock Exchange, on which Freddie Mac's shares are traded. Congress changed this restriction in 1989 when it converted the preferred stock to common stock and permitted public trading. (See 12 U.S.C. § 1453(a)(1)(B) and (a)(2).)

In April 1986, California's Insurance Commissioner (Commissioner) obtained an order appointing the Commissioner as TMIC's conservator. Two years later, the Commissioner was appointed liquidator of TMIC's estate.

TMIC's debts exceeded its approximately $281.5 million in assets. Freddie Mac submitted a claim for $32 million which represents insured loans in default at the time of the liquidation. Freddie Mac asserted its claim was

entitled to priority pursuant to Insurance Code section 1033, subdivision (a)(4), 12 United States Code section 1456(a) and 31 United States Code section 3713(a).

Insurance Code section 1033, subdivision (a)(4) provides: "Claims allowed in a proceeding under this article shall be given preference in the following order: . . . [¶] (4) Claims having preference by the laws of the United States and by laws of this state."

Title 12 of the United States Code section 1456(a) provided: "All rights and remedies of the Corporation, including without limitation on the generality of the foregoing any rights and remedies of the Corporation on, under, or with respect to any mortgage or any obligation secured thereby, shall be immune from impairment, limitation, or restriction by or under (1) any law (except laws enacted by the Congress expressly in limitation of this sentence) which becomes effective after the acquisition by the Corporation of the subject or property on, under, or with respect to which such right or remedy arises or exists or would so arise or exist in the absence of such law, or (2) any administrative or other action which becomes effective after such acquisition. *The Corporation shall be entitled to all immunities and priorities, including without limitation on the generality of the foregoing all immunities and priorities under any such law or action, to which it would be entitled if it were the United States or if it were an unincorporated agency of the United States.*" (Italics added.)[1]

Title 31 of the United States Code section 3713(a)(1) provides: "A claim of the United States Government shall be paid first when—(A) a person indebted to the Government is insolvent and—(i) the debtor without enough property to pay all debts makes a voluntary assignment of property; . . . (iii) an act of bankruptcy is committed; . . . ."

Freddie Mac moved for summary adjudication on the issue of its priority. The trial court held Freddie Mac was not entitled to priority and denied the motion. In so holding, the trial court concluded: (1) Freddie Mac's claim does not fall within 31 United States Code section 3713(a)(1); and (2) 12 United States Code section 1456(a) should not be construed to accord Freddie Mac the same priorities and immunities accorded the United

---

[1] Title 12 of the United States Code section 1456 was subsequently amended to delete the language upon which Freddie Mac relies concerning its immunities and priorities. We are not concerned with the effect of this amendment, however, because Congress provided the amendment "shall not apply to any assertion of priority by the Federal Home Loan Mortgage Corporation with respect to any cause of action or claim filed before the date of the enactment of this Act [August 9, 1989]." (Pub. L. No. 101-73, § 731(j)(2), 103 Stat. 435.)

States. Freddie Mac then petitioned this Court for a writ of mandate to compel the trial court to grant the motion for summary adjudication.

## DISCUSSION

### FREDDIE MAC IS NOT ENTITLED TO PRIORITY SINCE NO FUNDS OF THE UNITED STATES ARE AT RISK.

■ Freddie Mac contends 12 United States Code section 1456(a) accorded it with all of the priorities and immunities to which the United States is entitled, including 31 United States Code section 3713's priority for the payment of debts when the debtor is insolvent. The real parties in interest vigorously disagree with Freddie Mac's construction of 12 United States Code section 1456, arguing the statute should be construed more narrowly to provide immunity from certain types of moratorium laws or providing only those privileges accorded FHL banks.

We need not conclusively construe 12 United States Code section 1456(a) since, even accepting Freddie Mac's construction, it nonetheless would not be entitled to priority. As we explain below, any priority accorded the United States or its agencies is limited to instances where Treasury funds are at risk. Here it is uncontroverted there are no United States' funds at risk as a result of Freddie Mac's guarantees and, therefore, there can be no priority.

Title 12 of the United States Code section 3713 grants the United States a first priority where a person indebted to the United States becomes insolvent. (*United States* v. *Emory* (1941) 314 U.S. 423, 426 [86 L.Ed. 315, 321, 62 S.Ct. 317] [construing predecessor statute 31 United States Code, § 191]; *United States* v. *New Britain* (1953) 347 U.S. 81, 85 [98 L.Ed. 520, 525, 74 S.Ct. 367].) The intent underlying the statutory priority is to assure the United States adequate revenues "to sustain the public [burdens] and discharge the public debts" and it is with this intent the statute has been construed. (*United States* v. *Moore* (1975) 423 U.S. 77, 81-82 [46 L.Ed.2d 219, 223-224, 96 S.Ct. 310], citation and internal quotation marks omitted; *Spokane County* v. *United States* (1929) 279 U.S. 80, 92 [73 L.Ed. 621, 625, 49 S.Ct. 321].)

This statute has been construed to extend to agencies and officers of the United States. (*United States* v. *Remund* (1947) 330 U.S. 539, 542 [91 L.Ed. 1082, 1087, 67 S.Ct. 891]; see, e.g., *In re Agricultural Business Co., Inc.* (10th Cir. 1980) 613 F.2d 783, 786, 787 [priority granted to Tennessee Valley Authority as a corporate entity owned by the United States].) "[T]he priority given by § 3466 [now section 3713] to a debt due to the United

States is unaffected by the fact that a claim based upon that debt is filed in the name of an agency of the United States or an authorized officer of such agency." (*United States* v. *Remund, supra*, 330 U.S. at p. 542 [91 L.Ed. at p. 1087].) This does not mean, however, the priority blindly applies to any United States agency.

As the real parties in interest correctly argue, 31 United States Code section 3713 will only apply if the debt owed involves funds of the United States Treasury. Both the United States Supreme Court and the inferior federal courts have consistently imposed this condition precedent when reviewing claims of priority.

For example, in *Sloan Shipyards* v. *U.S. Fleet Corp.* (1922) 258 U.S. 549 [66 L.Ed. 762, 42 S.Ct. 386], Congress, in anticipation of war and to create a naval reserve and merchant marine, created the United States Shipping Board (Shipping Board) and empowered the Shipping Board to form a corporation to purchase, construct and operate merchant vessels. (*Id*. at p. 564 [66 L.Ed.at p. 767].) The Shipping Board was authorized to purchase at least a majority of the stock in this new corporation, which became the Fleet Corporation.

The Fleet Corporation subsequently claimed a priority against a bankrupt shipbuilder with which it contracted to construct tugboats. The Fleet Corporation asserted its priority as an instrumentality of the United States. (258 U.S. at p. 570 [66 L.Ed. at p. 769].) The United States Supreme Court denied the claim concluding the Fleet Corporation was to be treated like any other creditor. (*Ibid*.)

In *Nathanson* v. *Labor Board* (1952) 344 U.S. 25 [97 L.Ed. 23, 73 S.Ct. 80], the National Labor Relations Board (Board), a federal agency created to enforce the National Labor Relations Act, claimed priority pursuant to United States Code section 3713's predecessor statute when pursuing back pay against an insolvent employer. The United States Supreme Court held the Board was not entitled to priority because the debt owed was not one owing to the United States. (*Id*. at p. 27 [97 L.Ed. at p. 29].)

"It does not follow that because the Board is an agency of the United States, any debt owed it is a debt owing the United States within the meaning of [then R.S. § 3466]. The priority granted by that statute was designed 'to secure an adequate revenue to sustain the public burthens and discharge the public debts.' [Citation.] There is no function here of assuring the public revenue. The beneficiaries of the claims are private persons . . . ." (344 U.S. at pp. 27-28 [97 L.Ed. at p. 29].)

Similarly, in *Lapadula & Villani, Inc.* v. *United States* (S.D.N.Y. 1983) 563 F.Supp. 782, the district court held the Federal Deposit Insurance Corporation (FDIC) was not entitled to priority because its profits did not inure to the United States nor were its losses borne by the United States. "Thus, the public treasury will be unaffected by the FDIC's success or failure in recovering the debts owed to it as successor in interest to the claims of the [insolvent bank]." (*Id*. at p. 784.)[2]

In contrast, the United States Supreme Court held the Small Business Administration (SBA) was entitled to priority when seeking recovery for a loan made largely with Treasury funds. (*Small Business Adm'n* v. *McClellan* (1960) 364 U.S. 446, 453 [5 L.Ed.2d 200, 205, 81 S.Ct. 191].) The Supreme Court distinguished the facts from those in *Nathanson* based upon the source of the loaned funds.

"This Court's denial of priority in [*Nathanson*], involving claims in which the United States had no financial interest, would not justify a denial here where the money was loaned by, and the debt sought to be collected is due to, the United States . . . . Section 3466 declares in unequivocal language that the United States is entitled to priority '[w]henever any person indebted to the United States is insolvent,' and § 64 [of the Bankruptcy Act] recognizes that priority in bankruptcy proceedings. The purpose of these sections is simply to protect the interest of the Government in collecting money due to it." (364 U.S. at pp. 451-452 [5 L.Ed.2d at p. 204], footnote omitted; accord *United States* v. *Remund, supra*, 330 U.S. at p. 542 [91 L.Ed. at p.

---

[2] This conclusion has been overcome by subsequent events and, thus, the decision is of dubious precedential value as applied to the FDIC's status. As we have learned to our great sorrow with the analogous Federal Savings and Loan Insurance Corporation (FSLIC), the United States Treasury indeed may be the insurer of last resort for the FDIC and its member banks. In light of the savings and loan experience it no longer can be said with any confidence that "the public treasury will be unaffected by the FDIC's success or failure in recovering the debts owed to it . . . ."

Nevertheless, Freddie Mac is not the FDIC. It is not analogous to either the FDIC or the FSLIC. Freddie Mac does not insure its shareholders' investments with government funds nor is it owned by the United States government. Its profits and losses inure to the benefit or detriment of its private investors. In no way is the United States Treasury the bank or insurer of Freddie Mac's investors.

As real party Federal National Mortgage Association observed, a bankruptcy court concluded the FDIC was entitled to priority under the federal statute in an unrelated case. (See *In re Big 'D'iscount Stores, Inc.* (Bankr. Ct. Col. Div. S.C. 1976) 2 B.C.D. 1073.) While the bankruptcy decision conflicts with the district court's conclusion in *Lapadula*, both courts agreed whether Treasury funds were at stake was a condition for finding priority. The court in *In re Big 'D'iscount* relied heavily upon the factors discussed above, i.e., the FDIC is wholly owned by the United States, rather than private shareholders, the FDIC was not organized for private profit and the FDIC was financed by the United States government. (*Id*. at p. 1074.)

1087] [Farm Credit Administration entitled to priority where funds loaned were appropriated from the United States Treasury and returned to Treasury upon repayment]; see also *In re Agricultural Business Co., Inc., supra,* 613 F.2d at pp. 784-785, 786 [TVA, which is regularly funded by the United States Treasury, was entitled to statutory priority].)

Freddie Mac argues that since the priority statute provides Freddie Mac is entitled to the same priorities as if it were the United States, it is automatically entitled to priority under 31 United States Code section 3713. This argument is purely circular and begs the question.

Unquestionably, there are no cases truly analogous to ours. The closest factually appears to be *Sloan Shipyards* v. *U.S. Fleet Corp., supra,* 258 U.S. 549. There, a corporation created by the United States to further certain public goals was denied priority under the federal statute. In both cases Congress contemplated there would be private shareholders although in *Sloan Shipyards* all of the stock was owned by the United States while here Freddie Mac is entirely owned by private shareholders. (*Id.* at p. 565 [66 L.Ed. at p. 767].) Unlike our facts, however, the U.S. Fleet Corp. was not statutorily provided with any specific immunities or priorities although it was imbued with "enormous powers" including the right to condemnation. (*Id.* at p. 566 [66 L.Ed. at p. 768].)

Despite the lack of any controlling case law, the analysis employed by the courts in resolving the issues of priority indicates Freddie Mac's claim must fail. As the cases demonstrate, the *United States* is only entitled to priority to the extent the debt involves or affects Treasury funds. (*Nathanson* v. *Labor Board, supra,* 344 U.S. at pp. 27-28 [97 L.Ed. at pp. 28-29]; *Small Business Adm'n* v. *McClellan, supra,* 364 U.S. at pp. 451-452 [5 L.Ed.2d at pp. 204-205].) Freddie Mac does not cite to any cases to the contrary; indeed, the cases are in accord on this issue. If no Treasury funds are at risk, there is no debt owing the United States. To hold otherwise would ignore the statute's intent of providing the United States with adequate funds to meet its burdens. (*United States* v. *Moore, supra,* 423 U.S. at pp. 81-82 [46 L.Ed.2d at pp. 223-224]; *Spokane County* v. *United States, supra,* 279 U.S. at p. 92 [73 L.Ed. at p. 625].)[3]

---

[3] At one point, Freddie Mac cites to two unpublished federal decisions which it claims supports the assertion that 12 United States Code section 1456 provides it priority in this case. Ignoring the propriety of citing these cases, they nonetheless are inapposite to our case since the courts were concerned with Freddie Mac's immunity from antitrust litigation and not the federal priority statute. (See *Consolidated Farmers Mutual Insurance Co.* v. *Anchor Savings Assoc.* (Sept. 8, 1978) Dock. No. 78-4094 D. Kan., affd. *sub nom.* Consolidated Farmers Mu-

Freddie Mac suggests that if we construe 31 United States Code section 3713 to only permit priority where the debt includes or affects Treasury funds, we will be rendering the priority language of 12 United States Code section 1456 meaningless. This argument assumes Congress' sole intent in including the priority language was to afford Freddie Mac with 31 United States Code section 3713's immunity and no others. Of course, if this was true, Congress could have simply enumerated that priority as it has done in other instances. (See, e.g., 39 U.S.C. § 401(9) ["The Postal Service shall have the following general powers: . . . [¶] (9) . . . to have the priority of the United States with respect to the payment of debts out of bankrupt, insolvent, and decedents' estates;"].) As Freddie Mac has repeatedly conceded, 12 United States Code section 1456 refers to "all priorities," not simply an enumerated few. Accordingly, to the extent the United States is entitled to other priorities which are not dependent upon this Treasury funds exception, Freddie Mac would also be so entitled.

Freddie Mac also argues that if it is barred from receiving priority pursuant to 31 United States Code section 3713, our holding would strip the United States Postal Service of its priority statutes as provided in 39 United States Code section 401(9). While there are manifest differences between the two agencies and the applicable immunity statutes, the simple answer to this argument is that the Postal Service is funded in part with Treasury funds and, to the extent its revenues are insufficient to cover operating expenses, Treasury funds are appropriated to cover these deficits. (See 39 U.S.C. §§ 2003(e)(1), 2401.) Thus, if the Postal Service is unable to recover its debts, the Treasury is affected. (See *In re Agricultural Business Co., Inc.,* supra, 613 F.2d at pp. 784-785, 786; see also *United States* v. *Porter* (D. Idaho 1927) 24 F.2d 139, 141 [public money deposited by postmaster into bank which subsequently became insolvent entitled to priority under federal priority statute].)

Since Freddie Mac is not entitled to priority under any federal statute, a fortiori, it is not entitled to priority pursuant to Insurance Code section 1033, subdivision (a)(4).

In sum, the trial court properly concluded Freddie Mac is not entitled to priority for its claims against TMIC's estate. Accordingly, the petition for mandate must be denied.

tual Insurance Co. v. *Federal Home Loan Mortgage Corp.* (10th Cir. July 7, 1980) Dock. No. 78-1871.)

## Disposition

The petition for mandate is denied.

Lillie, P. J., and Woods (Fred), J., concurred.

Petitioner's application for review by the Supreme Court was denied December 13, 1990.