PIMA FINANCIAL SERVICE CORPORATION, an Arizona Corporation, Plaintiff,

v.

INTERMOUNTAIN HOME SYSTEMS, INC., a Colorado corporation, Federal Deposit Insurance Corporation, a corporation organized under the laws of the United States of America, and Department of Revenue, State of Colorado, Defendants.

Civ. A. No. 88–K–176.

United States District Court, D. Colorado.

March 10, 1992.

---

Mitchell B. Davis, Denver, Colo., for plaintiff.

Antony B. Dyl, Asst. Atty. Gen., Mary D. Metzger, Denver, Colo., for defendants.

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

KANE, Senior District Judge.

This is an interpleader action in which the Federal Deposit Insurance Corporation (FDIC) and the Department of Revenue of the State of Colorado (State) have both asserted an interest in funds held by the stakeholder, the PIMA Financial Service Corporation. The FDIC and the State have filed cross motions for summary judgment, each claiming its interest takes priority. On March 15, 1991, both parties filed a joint stipulation of facts. The FDIC has also moved for leave to submit citations of supplemental authority. That motion is granted.

The overriding issue in this case is whether the FDIC is a federal instrumentality whose action against the State is not barred by the Eleventh Amendment or the Tax Injunction Act and whose claim is entitled to priority under the Federal Insolvency Act. Despite recent legislation comprehensively amending the structure and role of the FDIC, Congress has failed to provide clear guidance on this question. Because of the lacuna Congress has created, I hold that the FDIC's claim against the State for the interplead funds is barred and its lien is not entitled to priority. I grant the State's motion for summary judgment and deny the FDIC's motion for summary judgment.

### I. *Facts.*

Intermountain Home Systems was a wholesale and retail outlet for fireplaces and stoves. Between September and November 1987, Intermountain installed fireplaces for PIMA at two construction sites in Colorado. As a result of this work, PIMA owed Intermountain $17,893.91.

On November 24, 1987, the FDIC, as liquidator of the former South Denver National Bank and a creditor of Intermountain, made demand on PIMA for these funds. The FDIC claimed its right to the funds under a security agreement originally filed on November 19, 1985.

On December 2, 1987, the State served PIMA with a notice of lien and garnishment under distraint for collection of delinquent state taxes, directing PIMA to pay to it any funds PIMA held for the benefit of Intermountain to satisfy partially Intermountain's delinquent sales and income withholding tax liability. On January 14, 1988, the State issued an order to PIMA to pay to it the funds PIMA owed to Intermountain. Unable to determine which party, the FDIC or the State, had priority in these funds, PIMA commenced this interpleader action on February 3, 1988, paying into the registry of the court the disputed $17,893.91. PIMA was dismissed without prejudice from further participation in the action on March 18, 1988.

Both the FDIC and the State now move for summary judgment, each arguing that it has priority to the interplead funds. The

FDIC claims priority under the Federal Insolvency Act, 31 U.S.C. § 3713. Alternatively, the FDIC argues that if the Act does not apply, its interest takes priority under the federal common law rule of "first in time, first in right." *See United States v. City of New Britain, Conn.*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). The State, on the other hand, contends that this action is barred by the Eleventh Amendment and the Tax Injunction Act, 28 U.S.C. § 1341, and that the Federal Insolvency Act does not apply to the FDIC. Even if the action is not barred, it asserts that under *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), priority must be determined with reference to state law, not federal common law, which would give priority to the State's tax lien. Since the parties have submitted a joint stipulation of facts and there are no disputed factual issues, I must determine as a matter of law which party will prevail. Fed.R.Civ.P. 56(c).

## II. *Merits.*

The fundamental issue in this case is whether the FDIC, acting in its corporate capacity, can be considered an arm of the federal government so as to permit it to circumvent the protection afforded to the State under the Eleventh Amendment and the Tax Injunction Act, and to entitle the FDIC to a superior claim to the interplead funds under the Federal Insolvency Act.[1] Although the court ruled previously that this action is not barred by the Tax Injunction Act because the FDIC is an agency of the government, (*see* Order, entered June 6, 1988; Order, entered Aug. 8, 1988), a more reasoned analysis of this issue is in order.

The Eleventh Amendment bars suits in federal court against a state by citizens of another state or a foreign state. U.S. Const. amend. XI. It does not bar actions brought by the federal government against a state. *Employees of Dept. of Public Health & Welfare, Mo. v. Department of Public Health & Welfare, Mo.*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); *United States v. Mississippi*, 380 U.S. 128, 140, 85 S.Ct. 808, 814, 13 L.Ed.2d 717 (1965); *Marquardt Corp. v. Weber County, Utah*, 360 F.2d 168 (10th Cir.1966). Similarly, the Tax Injunction Act provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Like the Eleventh Amendment, it is "inapplicable to suits brought by the United States 'to protect itself and its instrumentalities from unconstitutional state exactions.'" *Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 470, 96 S.Ct. 1634, 1640, 48 L.Ed.2d 96 (1976) (citing *Department of Employment v. United States*, 385 U.S. 355, 358, 87 S.Ct. 464, 466, 17 L.Ed.2d 414 (1966)). "In such cases, the government is permitted to pursue its action in federal court, notwithstanding the Tax Injunction Act." *FDIC v. State of N.Y.*, 928 F.2d 56, 58 (2d Cir.1991). Finally, the Federal Insolvency Act provides:

> (a)(1) A claim of the United States Government shall be paid first when—
>
> (A) a person indebted to the Government is insolvent and—
>
> (i) the debtor without enough property to pay all debts makes a voluntary assignment of property;
>
> (ii) property of the debtor, if absent, is attached; or,

---

1. In its brief in reply to the FDIC's motion for summary judgment, the State argues that this interpleader action is barred by the Eleventh Amendment and the Tax Injunction Act because it was commenced by PIMA, an Arizona corporation. The State's focus on PIMA's position as the plaintiff/stakeholder in the action is misplaced. Once it was determined that interpleader was appropriate and PIMA was dismissed from the action, the FDIC became the party adverse to the State with respect to the lien priority issue. In this stage of the interpleader action, both parties occupy the position of plaintiff and must state their claim and answer to the other. *See Reconstruction Finance Corp. v. Aquadro*, 7 F.R.D. 406, 409 (W.D.Pa.1947); 7 Charles A. Wright et al., *Federal Practice and Procedure* § 1714 at 584–85 (1986). Thus, the focus with respect to the Eleventh Amendment and Tax Injunction Act bar is on the FDIC, not PIMA.

(iii) an act of bankruptcy is committed; or

(B) the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor.

31 U.S.C. § 3713(a)(1). This statute likewise benefits only agencies that are part of the federal government. *See Small Business Admin. v. McClellan*, 364 U.S. 446, 448–50, 81 S.Ct. 191, 194–95, 5 L.Ed.2d 200 (1960) (construing predecessor statute).

To determine whether to apply the federal instrumentality exception to the Eleventh Amendment and the Tax Injunction Act, or the priority rule of the Federal Insolvency Act, the inquiry is essentially the same: I must consider whether the FDIC is an integral part of the federal system so as to benefit from the protection afforded the federal government. I take to heart the Supreme Court's observation that "there is no simple test for ascertaining whether an institution is so closely related to governmental activity" to be considered a federal instrumentality. *Department of Employment v. United States*, 385 U.S. 355, 358–59, 87 S.Ct. 464, 466–67, 17 L.Ed.2d 414 (1966).

Courts have consistently looked to several factors in making this determination. First, it is clear that the agency's status as a federally-chartered corporation is not dispositive. *See Cherry Cotton Mills, Inc. v. United States*, 327 U.S. 536, 539, 66 S.Ct. 729, 730, 90 L.Ed. 835 (1946) ("That Congress chose to call [the Reconstruction Finance Corporation] a corporation does not alter its characteristics so as to make it something other than what it actually is, an agency selected by Government to accomplish purely governmental purposes."); *In re Agricultural Business Co.*, 613 F.2d 783, 785–786 (10th Cir.1980) (irrelevant "whether the United States conducts its governmental business through an unincorporated administrative agency or through a federal corporation created by Act of Congress and wholly owned by the United States"). What is more important is whether the entity performs a governmental or a private function. *See, e.g., Depart-*ment of Employment, 385 U.S. at 358–60, 87 S.Ct. at 466–67; *Cherry Cotton Mills*, 327 U.S. at 539, 66 S.Ct. at 730; *FDIC v. Harrison*, 735 F.2d 408, 411 (11th Cir.1984)(distinguishing between proprietary and sovereign governmental functions for purposes of estoppel defense); *Federal Land Bank of Wichita v. Board of County Comm'rs*, 582 F.Supp. 1507, 1511 (D.Colo.1984) ("[w]here the instrumentality exists primarily to perform governmental functions" it may take advantage of the exception to the Tax Injunction Act).

In assessing whether an agency performs a governmental function, courts have often focused on the impact of the agency's activities on the federal fisc, *see, e.g., United States Dept. of Agriculture v. Remund*, 330 U.S. 539, 542, 67 S.Ct. 891, 892, 91 L.Ed. 1082 (1947) (Farm Credit Administration, by administering and lending funds from U.S. treasury, an integral part of the federal mechanism for purposes of claim priority); *Cherry Cotton Mills*, 327 U.S. at 539, 66 S.Ct. at 730 (Reconstruction Finance Corporation's money comes from government, its profits go to the government and its losses are borne by government); *cf. United States v. Vermont*, 377 U.S. 351, 358, 84 S.Ct. 1267, 1271, 12 L.Ed.2d 370 (1964) (goal of Federal Insolvency Act is to protect the federal revenues); 28 U.S.C. § 451 (defining the term "agency" under Title 28 as "any corporation in which the United States has a proprietary interest"), although this is not necessarily conclusive, *see Department of Employment*, 385 U.S. at 359, 87 S.Ct. at 467 (Red Cross a federal instrumentality under Tax Injunction Act, despite the fact that its operations financed primarily by voluntary contributions).

Using this analysis, courts have held a number of federally-chartered corporations to be part of the federal government for various purposes. *See, e.g., In re Agricultural Business Co., Inc.*, 613 F.2d at 786 (Tennessee Valley Authority part of federal government for purposes of bankruptcy claim priority under former 11 U.S.C. § 104(a)(5)); *Rust v. Johnson*, 597 F.2d 174, 177–78 (9th Cir.) (Federal National Mortgage Association, analogous to fed-

eral land and home banks, a federal instrumentality protected by supremacy clause with respect to state foreclosure action), *cert. denied,* 444 U.S. 964, 100 S.Ct. 450, 62 L.Ed.2d 376 (1979); *United States v. Rivieccio,* 661 F.Supp. 281, 287 (E.D.N.Y.1987) (National Credit Union Administration a federal instrumentality since its insurance fund is part of the federal treasury and it performs an important governmental function); *Federal Land Bank v. Board of County Comm'rs,* 582 F.Supp. at 1511 (Federal Land Bank performs important governmental function and is entitled to assert exception to Tax Injunction Act).

Conversely, under the same analysis, other federally-chartered corporations are not federal instrumentalities. *See United States v. Blumenfeld,* 128 B.R. 918, 929 (E.D.Pa.1991) (Government National Mortgage Association (GNMA), a special purpose organization without the cloak of federal sovereign immunity and not integral to the governmental mechanism, not entitled to § 3713 priority); *Federal Sav. & Loan Ins. Corp. v. Williams,* 599 F.Supp. 1184, 1202–1204 (D.Md.1984)(FSLIC, identical to the FDIC, is not an agency of the federal government for purposes of recoupment claim, since success of FSLIC "would not inure to the benefit of the sovereign in a legally sufficient and direct way"); *La Lomia v. United States (In re Art Metal U.S.A., Inc.),* 109 B.R. 74, 79–83 (Bankr.D.N.J.1989)(Pension Benefit Guarantee Corporation not a federal instrumentality for purposes of setoff against other government agencies; corporation's profits did not inure to benefit of the United States, its losses were not borne by the government and it was not federally funded); *Federal Home Loan Mortgage Corp. v. Superior Court,* 224 Cal.App.3d 218, 273 Cal.Rptr. 531 (1990) (Federal Home Loan Mortgage Corporation not entitled to § 3713 priority because no federal funds at risk).

Cases examining the FDIC under this approach offer no clear rule. The leading case on this issue is *Lapadula & Villani, Inc. v. United States,* 563 F.Supp. 782 (S.D.N.Y.1983), decided under 31 U.S.C. § 191, the predecessor statute to 31 U.S.C.

§ 3713. There the court held that the FDIC was not an arm of the federal government entitled to the benefit of the priority statute. The court observed that the statute "was enacted to insure that adequate public revenues would be available to shoulder public burdens and to discharge public debts." *Id.* at 784. With respect to the FDIC, it reasoned:

> The FDIC's profits do not inure to the benefit of the United States and its losses are not borne by the United States. Thus, the public treasury will be unaffected by the FDIC's success or failure in recovering the debts owed to it as successor in interest to the claims of the Franklin National Bank. It follows that the FDIC is not an integral part of the governmental mechanism but is rather a separate legal entity serving essentially a proprietary rather than a sovereign function. Since the purpose of the statute would not be served by permitting the FDIC to invoke the provisions of § 191, the Court concludes that the FDIC is not entitled to absolute priority.

*Id.*

Similarly, in *FDIC v. Harrison,* 735 F.2d 408 (11th Cir.1984), the FDIC brought suit against the guarantors of a promissory note it purchased as receiver of an insolvent bank. The defendant guarantors prevailed on their claim that the FDIC was estopped from collecting on the guaranty. On appeal, the FDIC asserted that the doctrine of equitable estoppel could not be applied against it because it was a government agency. The appellate court disagreed. It held that "the federal government may be estopped when it serves an essentially proprietary role and its agents act within the scope of their delegated authority." *Id.* at 411.

Examining the role of the FDIC, the court in *Harrison* noted that the corporation was created "as an instrument for insuring to a limited extent the deposits of the banks participating in the plan," and that its purpose was "to promote the stability of the banking system by preventing runs on banks by depositors and keeping

open the channels of trade and commercial exchange." *Id.* at 411–12.

We see no reason to apply the traditional rules of equitable estoppel to the conduct of FDIC in this case. As a holder of the three promissory notes, FDIC was acting as any liquidating agent or receiver of an insolvent bank. Although the debt collection activities of the Corporation, like the activities of any government agency, might be viewed in a broad sense as contributing to the accomplishment of the Corporation's purpose of maintaining a stable banking environment, FDIC was primarily serving as an instrument of the banking industry when it became receiver for the failed Southern National Bank. As would any other receiver or liquidating agent, FDIC should be required to deal fairly with its debtors and should be held accountable for the representations of its agents. Had Bell's promissory note been acquired by a financially sound bank in a "purchase and assumption" transaction, the assuming bank would be subject to the doctrine of equitable estoppel. The Corporation should be treated no differently.

*Id.* at 412. Relying on *Lapadula* and other Supreme Court cases, the court further held that the FDIC should be subject to the estoppel defense since the FDIC's profits and losses generally do not impact the public treasury. *Id.* at 412 n. 5.

Not every court has agreed with this reasoning. For example, in *In re Big 'D'iscount Stores, Ltd.,* 2 B.C.D. 1073 (Bankr. D.S.C.1976), the bankruptcy court found no reason to distinguish the FDIC from other government agencies, holding that the corporation was entitled to priority under the Federal Insolvency Act. It noted that the President appoints two of the FDIC's board members and the third is the Comptroller of the Currency, the FDIC was initially capitalized from federal funds, it must report annually to Congress, it is exempt from state and local taxes (except on real property), and its stock is owned by the United States. *Id.* at 1075. Further, the court observed that congressmen have consistently referred to the FDIC as a federal agency. *Id.* at 1075 n. 4.

Similarly, in *Rauscher Pierce Refsnes, Inc. v. FDIC,* 789 F.2d 313 (5th Cir.1986), the court held that the FDIC was a federal agency and could take advantage of the 60–day answer rule provided to federal agencies under Fed.R.Civ.P. 12(a). The court relied on other cases which had analyzed the same question in terms of 28 U.S.C. § 451. That statute, which defines the term "agency," requires the United States to hold a proprietary interest in the entity for it to be considered a governmental agency. The *Rauscher* court then examined the function and operation of the FDIC. It noted that other courts had been "quick to recognize" the FDIC's status as a governmental agency and had extended to it certain protections afforded to the federal government to aid the FDIC in its functioning, including the benefits of the Federal Tort Claims Act, federal statute of limitations, and defenses derived through federal common law. *Id.* at 315. The court concluded that "[t]he interest of the United States government in the FDIC is significant and critical," thereby entitling the FDIC to agency status under the Federal Rules. *Id.* at 316; *cf. Federal Home Loan Mortgage Corp. v. Superior Court,* 273 Cal.Rptr. at 534 n. 2 (casting doubt on the conclusion in *Lapadula* that the Treasury was not affected by the FDIC's activities "in light of the savings and loan experience" involving the FSLIC); *FDIC v. Lattimore Land Corp.,* 656 F.2d 139, 143 (5th Cir.1981) (summarily holding that FDIC is a government agency for purposes of Federal Tort Claims Act); *Safeway Portland Employees' Fed. Credit Union v. FDIC,* 506 F.2d 1213, 1215 (9th Cir.1974) (same).

In this case, the relevance of the above authorities must be reexamined in light of Congress' substantial amendment of the Federal Deposit Insurance Act (FDIA) by enactment of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), Pub.L. 101–73, 103 Stat. 183 (codified as amended in scattered sections of 12 and 15 U.S.C.). "Congress, through FIRREA, totally reorganized the supervisory structures and standards of

thrift institutions, subsumed the thrift insurance fund under the administration and supervision of the Federal Deposit Insurance Corporation ('FDIC'), substantially restricted the activities and investments of thrift institutions, and granted the FDIC its full 'wish list' for enhancement of regulatory enforcement powers." Daniel B. Gail & Joseph J. Norton, *A Decades' Journey from "Deregulation" to "Supervisory Reregulation": The Financial Institutions Reform, Recovery, and Enforcement Act of 1989*, 45 Bus.Law. 1103, 1105 (1990). Although FIRREA significantly expanded and reorganized the powers of the FDIC, it did little to resolve questions about the FDIC's status as a federal instrumentality.

Under FIRREA, the FDIC still retains aspects of both a private and a public corporation. Among the stated purposes of FIRREA are "to establish an independent insurance agency to provide deposit insurance for savers [and] to put the Federal Deposit Insurance System on a sound financial basis for the future." H.R.Rep. 54(I), 101st Cong., 1 Sess. 322, *reprinted in* 1989 U.S.C.C.A.N. 86, 118. The FDIC's primary duty to insure the deposits of banks remains, but the corporation's role has been expanded to include the duty to insure deposits of savings associations, examine savings associations under the same circumstances as banks, issue regulations barring savings associations from certain activities and take enforcement actions against them. Gail & Norton, *supra*, at 1111. Under FIRREA, these enforcement powers have been vastly expanded. *See id.* at 1188. In addition, through FIRREA, Congress expressly granted the FDIC federal agency status for the purposes of federal jurisdiction, 12 U.S.C. § 1819(b)(1), and civil actions by or against the FDIC are deemed to arise under federal laws, *id.* § 1819(b)(2)(A). There is an exception, however, for certain cases in which the FDIC acts as receiver by appointment of a state authority. *Id.* § 1819(b)(2)(D)(i); *see* Gail & Norton, *supra*, at 1112. The procedural and jurisdictional provisions of FIRREA have been held to apply retroactively.

*See Reding v. FDIC*, 942 F.2d 1254, 1256–57 (8th Cir.1991).

Despite these changes to the FDIC's mission and powers, the essential character of the insurance funds for banks and savings and loans as independent from the federal Treasury remains unchanged. As the legislative history to FIRREA notes:

It is the objective of the Congress and the Administration to maintain separate federal deposit insurance funds. Both the commercial bank and thrift deposit insurance funds will be under the control of the FDIC. The legislation renames the two insurance funds; the Bank Insurance Fund (BIF), serving commercial banks, and the Savings Association Insurance Fund (SAIF), for the thrift institutions. Member institutions will be required to pay increased premiums until each fund has sufficient resources to cover potential liabilities to the fund.

H.R.Rep. 54(I), *supra*, at 310. With the expansion of the FDIC's role to include oversight over thrift institutions formerly handled by the now-defunct FSLIC, however, and as the FDIC argues in its brief, it can no longer be said that the FDIC's losses do not impact the federal Treasury.

Under FIRREA, Congress recapitalized the deposit insurance fund for savings institutions. The Savings Insurance Fund (SAIF), which replaces the FSLIC insurance fund, has been authorized up to $16 billion in federal appropriations from 1992–99 if assessments from SAIF members are insufficient to maintain an established minimum net worth of the fund. *See* 12 U.S.C. §§ 1821(a)(6)(F), 1821(a)(6)(J)(ii); Gail & Norton, *supra*, at 1114–15. In addition, Congress created the FSLIC Resolution Fund, administered by the FDIC, into which all the assets and liabilities of the former FSLIC were transferred upon its dissolution other than those assets specifically transferred to the Resolution Trust Corporation. *See* 12 U.S.C. § 1821a(a)(3). The fund is to be used to pay judgments issued against the FSLIC before its dissolution and judgments against the FDIC relating to its administration of the FSLIC Resolution Fund or the former activities of

FSLIC. *See* 12 U.S.C. § 1821a(d); Gail & Norton, *supra* at 1150.

More importantly, if the funds from certain sources are insufficient to meet the FSLIC Resolution Fund's obligations, FIRREA authorizes the Secretary of the Treasury to provide such monies as are necessary to satisfy the fund's liabilities, subject to congressional appropriation. *See* 12 U.S.C. § 1821a(c). Once the FSLIC Resolution Fund has met its obligations and is dissolved, any remaining funds are to be paid into the Treasury. *See id.* § 1821a(f). Unlike the SAIF or the FSLIC resolution fund, however, the Bank Insurance Fund (BIF), which insures deposits of banks, did not receive an infusion of federal funds under FIRREA. The assets and liabilities of the former Permanent Insurance Fund maintained by the FDIC were simply transferred into the BIF. *Id.* § 1821(a)(5)(B).

Several courts have analyzed the status of the FDIC in light of the changes to its structure under FIRREA. The case most directly on point is *FDIC v. State of New York,* 718 F.Supp. 191 (S.D.N.Y.1989), *reh'g denied,* 732 F.Supp. 26 (S.D.N.Y. 1990), *aff'd in part,* 928 F.2d 56 (2d Cir. 1991). In that case, the FDIC brought suit in its corporate capacity, contesting taxes assessed by the State and City of New York on interest paid on deposits held by a bank participating in an FDIC assistance program. Under the program, the bank had assigned to the FDIC any claims it had against any party " 'whose action or inaction may be related to any loss incurred' " by the bank. 928 F.2d at 58. On the parties' original cross motions for summary judgment, the district court, citing its earlier decision in *Lapadula,* held that the FDIC's action was barred by the Eleventh Amendment and the Tax Injunction Act because the FDIC was not an instrumentality of the federal government. *See* 718 F.Supp. at 194–95. In addition, it ruled that the FDIC was barred by the Act because it held its interest as an assignee:

> Unlike the typical federal instrumentality case where the instrumentality itself has been subjected to state taxation, in this case it is the banks which have been taxed, not the sovereign. Any impact the taxes have upon the FDIC flows from its status as an assignee. However, as an assignee, it cannot have any greater right to enjoin the tax than its assignor the bank would have, and it is clear that the Tax Injunction Act would bar a similar suit by the bank. Under these circumstances, the FDIC cannot avail itself of the federal instrumentality exception, and the Tax Injunction Act bars the plaintiff's claims for injunctive and declaratory relief.

*Id.* at 195.

The FDIC then moved to reargue the case, relying principally on FIRREA's amendment of the FDIA to provide that the FDIC, in any capacity, was an agency of the federal government for the purposes of federal jurisdiction under 28 U.S.C. § 1345. *See* 732 F.Supp. at 27. The FDIC contended that this amendment made the FDIC a federal instrumentality for the purposes of the Eleventh Amendment and the Tax Injunction Act. The court adhered to its original ruling, however. It noted that the new jurisdictional provision was subject to exceptions created by Congress and that there was nothing in the legislation which indicated that the amendment was "anything more than a limited grant of 'federal agency' status to the FDIC." *Id.* at 28. It also rejected the FDIC's comparison of its jurisdictional status under the FDIA to that of the former FSLIC:

> The grant of authority to the FDIC, on the other hand, is much more limited. The statute detailing its corporate powers omits any statement that it is an instrumentality of the United States. *Compare* 12 U.S.C.A. § 1819(a) (1989) (FDIC) *with* 12 U.S.C. § 1725(c) (1988) (FSLIC). Moreover, as noted above, Congress made the FDIC an agency of the United States for purposes of a jurisdictional statute only. The FSLIC, on the other hand, is an agency of the United States within the general definition of the word "agency" [under 28 U.S.C. § 451]. Accordingly, the Court concludes that Congress specifically limited the FDIC's status as an "agency" of the United States and therefore adheres to

its original holding that the Supreme Court's ruling in *Smith v. Reeves,* 178 U.S. 436, 449, 20 S.Ct. 919, 924, 44 L.Ed. 1140 (1900), that federal corporations are barred from bringing suits against the state by the Eleventh Amendment, prevents the FDIC from maintaining this action against the state of New York. *Id.* at 29.

Although the district court's ruling in *FDIC v. State of New York* supports the proposition that the FDIC should not be considered an instrumentality of the federal government even after enactment of FIRREA, the Second Circuit affirmed the district court's ruling on a different basis. It assumed for the purposes of argument that the FDIC *was* a federal instrumentality, *see* 928 F.2d at 59, but held that the intent of the Tax Injunction Act would not be served by permitting the FDIC to take advantage of the exception to the Act. The court offered two reasons for this conclusion. First, the court held that it was clear that the FDIC's intent in bringing the suit was to protect commercial lending institutions rather than the federal government, and that the state and city's assessments on the institution's deposits would have "at most, a *de minimis* effect on the federal government." *Id.* Thus, the government's interest could be adequately protected by suit in state court. *Id.* Second, the appellate court echoed the district court's holding that the FDIC took its interest in this case, if any, by assignment and that "to allow the FDIC, as the [bank's] assignee, to elude the Tax Injunction Act would be to confer upon the FDIC as assignee greater rights than its assignor. This would contravene the fundamental principle that an assignee acquires from the assignor only those rights that the assignor enjoyed." *Id.* at 60.

Although the appellate court in *FDIC v. State of New York* offered no opinion on the district court's holding that the FDIC was not a federal instrumentality entitled to invoke the federal exception to the Eleventh Amendment and the Tax Injunction Act, *id.* at 61, it nevertheless observed that the FDIC was created primarily as an insurance company to protect depositors and that "its basic purpose is to insure depositors' assets." *Id.* at 60–61. It cautioned that

to allow the FDIC to invoke the federal instrumentality exception to the Tax Injunction Act in this case, we would be starting down a road leading toward use of the exception by any taxpayer whose operations were affected by congressional regulation. Taking this path would result in the erosion of the exception altogether.

*Id.* at 61.

In a second case addressing the effect of FIRREA, *FDIC v. Jenkins,* 888 F.2d 1537 (11th Cir.1989), the Eleventh Circuit held that the FDIC was not entitled to priority over claims against officers, directors and other officials associated with a failed institution. Examining the legislative history of the act, the appellate court found that Congress was clearly aware of priority issues when it enacted FIRREA. During consideration of FIRREA, a provision in the Senate bill which would have given the FDIC priority over shareholders to claims against officers, directors and other parties responsible for a bank's failure was rejected in the conference committee. Section 214(*o*) of the unenacted Senate bill provided:

In any proceeding related to any claim acquired under section 11 or 13 of this Act against an insured financial institution's director, officer, employee, agent, attorney, accountant, appraiser, or any other party employed by or providing services to an insured financial institution, any suit, claim, or cause of action brought by the Corporation shall have priority over any such suit, claim, or cause of action asserted by depositors, creditors, or shareholders of the insured financial institution, except for claims of Federal agencies as provided in section 6321 of the Internal Revenue Code of 1986 and section 3713 of title 31, United States Code. This priority shall apply to both the prosecution of any suit, claim, or cause of action, and to the execution of any subsequent judgments resulting from suit.

S. 774, 101st Cong., 1st Sess. § 214(o) (1989). The conferees elected not to include this section in the House bill primarily because it would discourage private fraud enforcement. *See* 135 Cong.Rec. H4985 (daily ed. Aug. 3, 1989) (remarks of Rep. Glickman). Based in part on the rejection of the Senate Amendment, the *Jenkins* court held that the FDIC was not entitled to absolute priority over shareholder claims. *See* 888 F.2d at 1538 n. 1, 1544.

Reference in S. 774 to the Federal Insolvency Act indicates that Congress was aware of these priority issues when considering FIRREA. The language of the rejected amendment illustrates that Congress did not view the FDIC as a federal agency eligible for coverage under the Federal Insolvency Act, since exception of claims of government agencies would be superfluous if, in fact, the FDIC was one of those agencies. Moreover, Congress has expressly. granted to other government instrumentalities all immunities and priorities available to the United States and its agencies. *See, e.g., United States v. Blumenfeld,* 128 B.R. at 929 n. 10 (discussing priorities authorized the Federal Home Loan Bank Board); *Federal Home Loan Mortgage Corp. v. Superior Court,* 273 Cal. Rptr. at 535 (noting enumeration of priority to United States Postal Service in 39 U.S.C. § 401(9)). As the court in *Jenkins* observed,

> Of course, it would be convenient to the FDIC to have an arsenal of priorities, presumptions and defenses to maximize recovery to the insurance fund, but this does not require that courts must grant all of these tools to the FDIC in its effort to maximize deposit insurance fund recovery. Any rule fashioned must have its base on the goal of effectuating congressional policy. We are not convinced that Congress considered collections against parties such as the bank-related defendants in this case as a necessary part of the recovery to the deposit insurance fund. Any such priority over third-party lawsuits will have to come from Congress, not this court.

888 F.2d at 1546.

As these cases illustrate, there is no easy answer to whether the FDIC should be considered a federal instrumentality under the Eleventh Amendment, the Tax Injunction Act or the Federal Insolvency Act. Even after FIRREA, the FDIC has aspects of both a government agency and a private insurer of commercial banks and lending institutions. There is no doubt that the FDIC serves an important public function in fostering the stability of our nation's financial institutions. Yet, this is for the most part accomplished through the deposit insurance funds administered by the FDIC, which Congress intended to be independent and self-sustaining. Because the FDIC is now responsible for oversight of thrifts, however, it is fairly certain that FDIC's losses will, at some point, be borne by the federal Treasury. The FSLIC's losses, now the FDIC's responsibility to resolve, have already required a substantial infusion of government funds.

This action, however, involves the FDIC acting in its corporate capacity with respect to a failed bank, not a savings institution. There is no indication in FIRREA that Congress intended losses from insolvent banks to be funded by the federal fisc. While I am wary of making this distinction between the FDIC's role as insurer of banks and savings and loans, there are other reasons that the FDIC should not be considered a federal instrumentality in this case. Congress, in amending the FDIC's powers under the Federal Deposit Insurance Act, chose not to give the FDIC full-fledged agency status, as it had earlier done with the FSLIC, to accomplish its mission. Nor did Congress expressly grant the FDIC priority under § 3713, which it has done with other quasi-governmental institutions.

■ For this reason, I conclude that the FDIC cannot be considered a federal instrumentality for the purposes of the Eleventh Amendment and the Tax Injunction Act. In my mind, this mandates a finding that it is likewise not entitled to assert its priority under the Federal Insolvency Act, for if an entity is not a federal instrumentality under the Eleventh Amend-

ment or the Tax Injunction Act, it is not one for the purposes of the priority statute. Even if this is not the case, the legislative history of FIRREA further indicates that the FDIC cannot take advantage of certain priorities normally afforded to the federal government, supporting the view that the FDIC's claim is not entitled to priority under the Federal Insolvency Act.

■ Under these circumstances, the State must prevail on its motion for summary judgment. If the FDIC is not a federal instrumentality for the purposes of the Eleventh Amendment or the Tax Injunction Act, this action is barred. Alternatively, if the action is not barred, the FDIC's claim is still not entitled to priority under 31 U.S.C. § 3713. Thus, priority between the FDIC's non-tax consensual lien and the State's tax lien must be determined by the rule of *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979).[2] Under that case, " 'absent a congressional directive, the relative priority of private liens and consensual liens arising from these Government [SBA and FMHA] lending programs is to be determined under nondiscriminatory state laws.' " *Federal Land Bank of Wichita v. Ferguson*, 896 F.2d 1244, 1246 (10th Cir.1990) (quoting *Kimbell Foods*, 440 U.S. at 740, 99 S.Ct. at 1464; *see also United States v. Tipton*, 898 F.2d 770 (10th Cir.1990).

Under Colorado state law, liens for withholding and sales and use taxes are entitled to priority over all other liens. *See* Colo. Rev.Stat. §§ 39–22–604(7), 39–26–117(1)(a). In this case, the application of nondiscriminatory state law priority rules does not unduly threaten federal policy or interests, and recognizes the "equally significant interest of the state ... in the effective and efficient collection of [its] tax revenue." *Tipton*, 898 F.2d at 772; *Yankee Bank for Finance & Sav., F.S.B. v. Task Assocs., Inc.*, 731 F.Supp. 64, 68–69 (N.D.N.Y.1990) (application of New York law appropriate

in case involving priority of FDIC lien). Under Colorado law, the State's lien therefore takes priority.

Accordingly, IT IS ORDERED that the FDIC's motion for leave to submit citations of supplemental authority is GRANTED; and

IT IS FURTHER ORDERED that the FDIC's motion for summary judgment is DENIED; and

IT IS FURTHER ORDERED that the State's motion for summary judgment is GRANTED.

---

**2.** The FDIC asserts that the "first in time, first in right" rule of *United States v. New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954), applies because the FDIC's lien is not consensual, in that the FDIC did not "voluntarily" acquire the assets of the South Denver National Bank. I

disagree. The focus is not on how the FDIC acquired its rights under the lien, but how the lien was created. In this sense, the lien between the Bank and Intermountain arose by consensual agreement, and the FDIC simply stands in the Bank's shoes with respect to its enforcement.